The People of Puerto Rico, Plaintiff and Appellee, *v.* Arsenio Reyes et al., Defendants and Appellants.

No. 8003. Argued April 1, 1940.—Decided April 3, 1940.

*Reyes Delgado & Santos Borges* for appellants. *R. A. Gómez, Prosecuting Attorney*, and *Luis Janer, Assistant Prosecuting Attorney*, for appellee.

Mr. Justice De Jesús delivered the opinion of the court.

Arsenio Reyes and Ramón Rivera were sentenced to the payment of a $25 fine or, in default thereof, to one day in jail for each dollar of the fine left unpaid, on a conviction of adulteration of milk, committed, according to the information, as follows: That on or about the 16th of November 1938, in Jayuya, Puerto Rico, they, unlawfully and wilfully, were carrying and keeping for sale, for human consumption, cow's milk adulterated with water.

In the appeal taken to this court the appellants allege that it was error for the trial court to deny their motion for a peremptory discharge, to sentence them without it being proved at the trial that the court had jurisdiction in the premises, and that the judgment is contrary to law and to the evidence.

The questions to be determined in the present appeal are: (*a*) Did the district attorney show the place where the offense was committed?, and (*b*) is the judgment sustained by the evidence?

Neither of the two witnesses who testified at the trial even mentioned the place where the acts referred to in their testimony were committed. If no other evidence had been submitted, we would have to agree with the appellants that the jurisdiction of the court had not been shown. But the documentary evidence weighed in connection with the testimony of Health Inspector Francisco Hernández Negrón shows that the place of the commission of the offense was the town of Jayuya as charged in the information.

It appears from the testimony of Inspector Hernández Negrón that the samples of milk were taken in the case of one of the defendants in the inspector's office. So far there

is no evidence as to the place where the defendants were transporting and keeping the cow's milk for sale, although it is a logical inference that such place is that where the inspector had his office, as it is inconceivable that said officer had caught the defendants while transporting and offering said article for sale and then should move to another town for taking a sample of it. It having been shown that the place where the sample was taken was the same where the health inspector was serving, exhibit 1 of The People furnishes us the necessary information for determining the place. Exhibit 1 of The People reads as follows:

"Government of Puerto Rico—Department of Sanitation—Division of Milk Supply—No. 3126—San Juan, P. R., November 22, 1938.

"Messrs. Arsenio Reyes and Ramón Rivera,—*Through Inspector Francisco Hernández Negrón, Jayuya, Puerto Rico.*

"Sir: The sample of cow's milk No. P. H. N. 492 was found to be adulterated. If you have analyzed the duplicate sample which the Inspector left with you and a discrepancy appears between the result of your analysis and ours, please advise the Commissioner immediately in order to make an analysis of the triplicate sample in the presence of experts from both sides, if you so wish.—You are warned that you should avail yourself of this right with all diligence, for after the lapse of fifteen days (from the time of the taking of the sample by our Inspector) the (chemical) composition of the milk tends to undergo changes and its analysis then would be of no use.—Respectfully, by order of the Commissioner.—Per the Chief of the Bureau (signed:) Dr. F. García de la Torre, General Medical Inspector.—2396.

"Nov. 24/38—8 a. m., Ramón Rivera (his mark). Witness' marks (signed:) Alino Rivera.

"Nov. 24/38—12.45 p. m. (signed:) Arsenio Reyes. Notified by F. Hernández Negrón."

The offense, according to the information and the evidence (T. of R. p. 1), was committed on November 16, 1938, and as appears from exhibit 1 of The People, on the 22nd of the same month Inspector Hernández Negrón was serving in Jayuya and in Jayuya also the defendants resided, for it

can not logically be assumed that, there being a health inspector in each town, such communication should be mailed to the defendants through an inspector residing in a town other than that where they reside. As regards the notification of the result of the analysis, Inspector Hernández Negrón testified as follows:

"Q. Did you afterwards notify anybody, any person regarding the result of the analysis?—A. Upon receiving the result of the analysis I sent for Arsenio Reyes who came to town and also Ramón Rivera who marked the paper with a cross, the notification, when I told him what it meant, I read it out to him and told him that the sample contained water and I informed Reyes and he came to town, to my house, and in my house I notified him about that.

"Q. Look at this and tell me if this is the notification.—A. That is it.

"Q. Are these the people concerned?—A. They signed in my presence." (T. of E. pp. 2–3.)

From an examination of the concomitant circumstances, it must necessarily be concluded that the evidence sufficiently shows that the place where the offense was committed is the same as that stated in the information, and it is not indispensable that such fact should be proven by direct evidence. To this effect and in *People* v. *Andino,* 55 P.R.R. 68, 72, we expressed ourselves as follows:

"It is a well established rule that the place where a crime occurs may be established by circumstantial evidence. Abbott's Criminal Trial Brief, third edition, page 1020, and cases cited.

"This question is not new in this jurisdiction. In the case of *People* v. *Llabrés,* 29 P.R.R. 697, in which the evidence only showed that the crime had been committed in the American Colonial Bank without it being stated where said bank had its establishment, this court upheld the jurisdiction of the District Court of San Juan. From the syllabus we take the following:

" 'The venue need not be proved by direct and positive evidence. It is sufficient if it may be reasonably inferred from the facts and circumstances which are proved and are involved in the criminal transaction, or if it may be inferred from the circumstances that the crime was committed in the place alleged.'

"See also Underhill on Criminal Evidence, fourth edition, Section 96, page 116, cited with approval in the case of *People* v. *Llabrés, supra.*"

 Taking up now the second of the questions raised, the testimony of Inspector Hernández Negrón, corroborated by that of witness Avino Rivera, shows the elements constituting the offense. It appears from both testimonies that on November 16, 1938, said health inspector caught Ramón Rivera carrying an eight-litre milk can and requested him to come to his office so as to take a sample. He poured the contents on the balcony of his office, one litre, and took the samples as provided in the Health Regulations. Arsenio Reyes was not present, but the can, although not sealed, had a red mark saying: "Milk-pail of Arsenio Reyes." On November 24, 1938, Arsenio Reyes who, according to the evidence, owned a dairy, signed without protest the acknowledgment of the notification, and it does not appear from the record that the evidence of the prosecution had been controverted in any way. It seems pertinent to repeat here what we said in *People* v. *Acosta Padilla, ante,* p. 134, as follows:

"The lower court construed the law correctly. The offense defined in Act No. 12 of August, 1925, is committed by transporting, keeping and offering for sale, for human consumption, adulterated milk. The consummation of the sale is not an essential element of the offense. It is sufficient that the defendant transports adulterated milk and that he offers the same for sale for human consumption. This being so, it was not error for the court to inform the defendant that the district attorney was not bound to prove the consummation of the sale."

See also *People* v. *Morales,* 47 P.R.R. 721, and *People* v. *Rubio,* 53 P.R.R. 535, cited by the prosecuting attorney.

The questions raised having been so determined and as the errors assigned are without merit, as shown by the record, the appeal must be dismissed and the judgment appealed from affirmed.

Mr. Justice Travieso took no part in the decision of this case.